[No. 9861. Department One. December 26, 1911.]

RUCKER BROTHERS, INCORPORATED, *et al.*, *Appellants*, v. THE CITY OF EVERETT *et al.*, *Respondents*.[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS — ASSESSMENTS — CONFIRMATION—OBJECTIONS—TIME FOR MAKING. Under Rem. & Bal. Code, § 7532, providing that the regularity, validity and correctness of a local assessment must be challenged when the roll is before the city council for confirmation and all objections not so made are conclusively waived, and § 7533, providing that the assessment becomes conclusive in all things upon all parties not appealing therefrom, an objection to an assessment in that it exceeds fifty per cent of the assessed valuation of the property, in violation of the city charter, is waived if the objection is not made before the city council and appeal taken.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered June 28, 1911, after a trial on the merits, dismissing an action for equitable relief. Affirmed.

*Coleman, Fogarty & Anderson*, for appellants.

*Benj. W. Sherwood* and *Ralph C. Bell*, for respondents.

PARKER, J.—This action was commenced by summons and complaint, in the superior court for Snohomish county, seeking a decree annulling a local improvement assessment which had theretofore been made and confirmed by the city council

[1]Reported in 119 Pac. 807.

of the city of Everett. From a judgment dismissing the action, the plaintiffs have appealed to this court.

The facts shown by the record before us which we regard as determinative of the rights of the parties are not controverted, and may be summarized as follows: In the spring of 1908, the authorities of the city instituted proceedings looking to the improvement of certain streets therein at the expense of the property to be benefited. These proceedings resulted in the creation of a local improvement district, the construction of the improvement, the assessment of the cost thereof against the property benefited, and the confirmation of that assessment by the city council. None of the property owners objected to the assessment prior to, or when it was before the council for, confirmation, nor did any of the property owners appeal to the superior court from the confirmation by the council. The cost of the improvement was considerably more than fifty per cent of the total assessed valuation of the lots and lands contained in the assessment district, as that valuation appeared upon the assessment rolls of the county made for general taxation. No petition of the property owners was filed with the city authorities giving their consent to an assessment to pay the costs of the improvement in an amount exceeding fifty per cent of the value of the property of the district, as fixed by its assessment for general taxation. The improvement was authorized by an ordinance of the city council passed by a two-thirds vote of all the members thereof.

No contention is made here requiring our notice, save that, in the making of the assessment in a total sum exceeding fifty per cent of the assessed value of the property for general taxation, the city council exceeded its jurisdiction to the extent that the assessment is not rendered valid by its confirmation, notwithstanding that no objections were then made thereto nor any appeal taken therefrom to the superior court. No other irregularity in the proceedings, nor any want of notice to the property owners provided by ordinance

·or charter, is claimed by appellants. Neither is it claimed that there is any want of due process of law in the notice so provided for, giving the property owner a hearing upon the ·confirmation of the assessment. Neither is it contended that the property is not benefited to the amount of the assessment.

Everett, being a city of the first class, and having power under the state constitution to frame and adopt its own ·charter, has therein provided in subd. 2, § 138, relating to the power of local assessment, as follows:

"The city council shall have full authority to consider all matters in relation to such proposed improvement, and may authorize the same by ordinance or refuse it in its discretion: provided, that unless the petition for said improvement shall be signed by three-fourths of the property to be assessed therefor and specifies a greater percentage than fifty per ·cent, the city council, or board of public works shall not have authority to further proceed in the matter of such improvement whenever the cost of any such improvement or work ordered to be done by the city council and chargeable as a lien against the property specially benefited within such assessment district shall exceed fifty per cent of the total assessed valuation of the lots or parcels of land contained in such assessment district as the same appears upon the last annual assessment roll, made for the levying of taxes for municipal purposes, in which case such improvement shall not be granted unless the same be so modified that the cost thereof shall not exceed such fifty per cent of the aforesaid valuation. Said limit of fifty per cent, however, may be extended when any improvement shall be petitioned for by the owners of three-fourths of the property to be assessed for said proposed improvement, and when such petition specifies not to exceed a certain higher percentage."

This subdivision also gives the council the power to construct local improvements at the cost of the property benefited thereby, without petition of the property owner, with this restriction:

"Provided, that unless a petition as hereinbefore prescribed be presented, such improvement shall not be or-

dered except by ordinance passed by the affirmative vote of two-thirds of all the members of the city council."

The charter also provides for notice to property owners of a hearing before the council when the roll is before it for confirmation. No question is raised, however, touching the regularity of this step in the proceedings, as we have already noticed.

We are now confronted with the question, what is the effect of the confirmation of this assessment upon the rights of appellants for which they are here contending? Was that confirmation a final adjudication as against the contentions which the appellants are here making, or is the power of the council so circumscribed by the charter provisions above quoted, that we must hold the assessment beyond the fifty per cent limit to involve a question of jurisdiction which cannot be foreclosed against the property owners by the confirmation of the assessment. There is language in the charter which, at least inferentially, indicates that, in order to avail themselves of this infirmity in the assessment, the property owners must object to the assessment upon the hearing before the council. However that may be, there are certain provisions of our statute law providing for the confirmation of assessments for local improvements by the council, and for a review of such confirmation in the courts at the instance of the property owners, which seem to fully answer our inquiry. Rem. & Bal. Code, § 7532, relating to local improvement assessments by cities of the first class, provides:

"Whenever any assessment roll for local improvements shall have been prepared as provided by law, charter or ordinance of any city of the first class, and such assessment roll shall have been confirmed by the council or legislative body of such city, after due and proper notice to the property owner, as provided by law, charter or ordinance, so that said owners of property may have a reasonable opportunity to object to or protest against any assessment, the regularity, and correctness of the proceedings to order said improvement, and the regularity, validity and correctness of said assessment

cannot in any manner be contested or questioned in any pro-
ceeding whatsoever by any person not filing written objec-
tions to such roll, prior to the same being confirmed, as afore-
said, and at such time or times as may be prescribed by
charter or ordinance. Upon any objections being filed as
aforesaid, the council or other legislative body, at the time
set for hearing objections to the confirmation of said roll, or
at such time as said hearing may be adjourned to, shall have
power to correct, revise, change or modify such roll, or any
part thereof, and to set aside such roll and order that said
assessment be made *de novo*, as to such body shall appear
equitable and just, and shall confirm the same, as corrected,
by resolution or ordinance, in conformity with the charter
of such city. All objections shall state clearly the grounds
of objection, and objections to such assessment roll or to the
assessment proceedings not made before such council, or
other legislative body, as aforesaid, shall be conclusively pre-
sumed to have been waived."

Rem. & Bal. Code, § 7533, declares the effect of the con-
firmation by the council as follows:

"The action of the council or other legislative body, here-
inbefore mentioned in confirming such assessment roll shall
be conclusive in all things upon all parties not appealing
therefrom in the manner and within the time hereinbefore
mentioned, and no proceeding of any kind shall be com-
menced or prosecuted for the purpose of defeating or con-
testing any such assessment, or the sale of any property to
pay such assessment or the foreclosure of any lien herein pro-
vided for: Provided, this section shall not be construed as
prohibiting the bringing of injunction proceedings to pre-
vent the sale of any real estate upon the grounds: (1) That
the property about to be sold does not appear upon the as-
sessment roll, and (2) that said assessment has been paid."

Then follow provisions enabling the property owners to
have the confirmation reviewed in the courts by direct appeal
from the action of the council. All of these statutory pro-
visions were in existence when the city of Everett framed and
adopted its charter under which this improvement and as-
sessment were made. This may account for the lack of spe-
cific language in the charter declaring the effect of the con-

firmation of the assessment roll by the council. It will be noticed that by the express terms of § 7532 the *"regularity, validity,* and *correctness"* of the assessment are to be challenged only as therein provided, and by the express terms of § 7533, the assessment becomes *"conclusive in all things upon all parties not appealing therefrom,"* except in the two particulars mentioned, with which we are not here concerned. It seems to us that this language is amply comprehensive to render unavailing, after confirmation and failure to appeal therefrom, an objection upon the ground that the assessment exceeds the fifty per cent charter limit. This objection in its last analysis is only an objection to the amount of the assessment, and does not go to the power of the city to make the improvement and to assess the property to some extent to pay the cost thereof. These statutory provisions are fully as comprehensive as those of the same character found in the reassessment law of 1893, Rem. & Bal. Code, § 7898, which this court has repeatedly held, preclude a review of the assessment save by objections thereto before the council and appeal therefrom to the courts. Among the early expressions of this court so holding, is one found in *Tumwater v. Pix,* 18 Wash. 153, 51 Pac. 353, as follows:

"No reason is suggested why respondent did not appear and make his objection before the town council. That body had jurisdiction of the subject-matter and was clothed with power to arrive at a correct determination. It was the tribunal appointed by the law for the correction of any mistakes or irregularities. Parties interested cannot be permitted to disregard the opportunities so afforded for a hearing, and to select a forum of their own choosing. They must make their objections seasonably, before the tribunal which the law appoints for that purpose, and, failing to do so, cannot thereafter be heard to complain."

This view has been adhered to in the following decisions: *New Whatcom v. Bellingham Bay Imp. Co.,* 18 Wash. 181, 51 Pac. 360; *Northwestern & Pacific Hypotheek Bank v. Spokane,* 18 Wash. 456, 51 Pac. 1070; *Annie Wright Sem-*

*inary v. Tacoma*, 23 Wash. 109, 62 Pac. 444; *McNamee v. Tacoma*, 24 Wash. 591, 64 Pac. 791; *Young v. Tacoma*, 31 Wash. 153, 71 Pac. 742; *Ferry v. Tacoma*, 34 Wash. 652, 76 Pac. 277; *Alexander v. Tacoma*, 35 Wash. 366, 77 Pac. 686.

Now let us assume, for argument's sake, that none of the objections to the assessments involved in these cases were of so serious a nature as that made against this assessment. Whatever may be said of this excessive assessment, the requirement that it shall not exceed fifty per cent of the assessed valuation of the property for general taxation exists only because it is contained in the charter. There is no constitutional limit of this nature to local assessment taxation. Hence, the law-making power could have left the amount entirely without limit of this nature, or could have fixed any limit deemed expedient. The same power—that is, the charter or statute-making power—could provide that the question of the amount of the assessment shall become conclusive against the property owners upon the decision of the city council confirming the assessment, when such decision is rendered upon notice to the property owners amounting to due process of law. A requirement of the law to be observed in levying a tax by taxing officers, which requirement could have been dispensed with by the law in the first instance, can become conclusive as to its observance, against the property owner, by the law awarding him a hearing thereon. That is what has been done by these statutes, which declare the effect of the decision upon such hearing in such comprehensive language as to render finally adjudicated against appellants the objections now made against this assessment. This is, in substance, the theory upon which tax deeds may be made conclusive evidence of the observance of requirements in the tax proceeding which the law-making power might have dispensed with in advance. Black, Tax Titles (2d ed.), § 452. These charter and statutory provisions, in effect, say that the assessment shall not exceed fifty per cent of the assessed value of the property for general tax-

ation, but if the assessment be not objected to on that account upon the confirmation hearing, such objection is thereafter foreclosed and the validity of the assessment rendered conclusive against the property owner. These provisions leave the property owner in no worse situation than as if they had left the power of assessment unlimited in the first instance; hence, while they give this right to the property owner, they also provide a method by which it may be lost for want of objection on his part.

In *Ferry v. Tacoma,* 34 Wash. 652, 76 Pac. 277, there is language used relied upon by counsel for appellants which might be construed to mean that this court was of the opinion that, under no circumstance, could an assessment exceeding the fifty per cent limit be upheld, even after confirmation. That language, however, was only used as indicating the general nature of the charter provision. We find no holding in that case that such an objection would avail the property owner other than by making it before the council upon confirmation of the assessment, and appealing therefrom to the courts. That case did not call for a discussion of the question here involved. We are of the opinion that appellants cannot now urge against this assessment their claim that it exceeds the fifty per cent limit prescribed by the charter, since they did not make that objection before the council, nor did they appeal from the council's action confirming the assessment to the courts. That right has been lost to them by a notice and proceeding which constituted due process of law.

The judgment is affirmed.

DUNBAR, C. J., MOUNT, GOSE, and FULLERTON, JJ., concur.